UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ANTHONY PARISH, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:21-CV-475 RLM-MGG |
| | ) | |
| WILLIAM HYATTE and | ) | |
| GEORGE PAYNE, JR., | ) | |
| | ) | |
| *Defendants* | ) | |

OPINION AND ORDER

Anthony Parish has sued Warden William Hyatte and Deputy Warden George Payne, Jr., in their individual capacities, alleging that they subjected him to unconstitutional conditions of confinement while he was imprisoned at Miami Correctional Facility. Mr. Parish sued from prison, so the Prison Litigation Reform Act's requirement that he exhaust all administrative remedies before suing over prison conditions applies. *See* 42 U.S.C. § 1997e(a). The defendants have moved for summary judgment, and Mr. Parish has cross-moved for summary judgment, on the issue of exhaustion of administrative remedies. Mr. Parish requests oral argument to present legal arguments but not additional evidence. Neither party requested a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

For reasons explained in this opinion and order, the court DENIES the defendants' motion for summary judgment [Doc. 19], GRANTS Mr. Parish's

motion for summary judgment, [Doc. 35], and DENIES AS MOOT Mr. Parish's request for oral argument. [Doc. 49].[1]

LEGAL STANDARD

A party is entitled to summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court "constru[es] all facts and draw[s] all reasonable inferences in favor of the party against whom the motion under consideration was filed." Hess v. Bd. of Trs. of S. Ill. Univ., 839 F.3d 668, 673 (7th Cir. 2016) (citation omitted). A party can't defeat summary judgment by merely alleging a factual dispute; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

A defendant isn't entitled to a jury trial on contested issues involving exhaustion. Wagoner v. Lemmon, 778 F.3d 586, 590 (7th Cir. 2015) (discussing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)). A court holds a Pavey hearing to resolve issues of fact bearing on exhaustion, but "[w]hen there are no disputed

---

[1] Mr. Parish's action was consolidated for pretrial, non-dispositive matters with several other cases with similar allegations against the same defendants, [Doc. 15], and he requests consolidated oral argument. [Doc. 49]. The exhaustion defense is a dispositive matter, so the court resolves the issue in separate orders.

facts regarding exhaustion, only a legal question, the court may resolve the issue without a hearing. Vela v. Ind. Dep't of Corr., No. 3:16 CV 51, 2017 U.S. Dist. LEXIS 9279, at *2 (N.D. Ind. Jan. 24, 2017).

BACKGROUND

Anthony Parish alleges that Warden Hyatte and Deputy Warden Payne violated his constitutional rights when they kept him in a restrictive housing unit cell at Miami Correctional Facility for approximately forty-five days beginning on August 31, 2020. He alleges that his cell had broken lights and a window covered with sheet metal, so was extremely dark, and had live wires draping from the ceiling. He says that he was allowed to leave only once every three to five days for a fifteen-minute shower. He claims that cell's conditions caused several injuries, both physical and psychological. He claims this treatment violated his Eighth Amendment right to be free from cruel and unusual punishment and seeks to hold Warden Hyatte and Deputy Warden Payne accountable by way of 42 U.S.C. § 1983.

Mr. Parish sued from prison, so the defendants aren't liable if they can show that Mr. Parish didn't exhaust administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).

*Miami Correctional Facility's Administrative Remedies*

Miami Correctional Facility receives and manages prison grievances according to the Indiana Department of Correction's Offender Grievance Process,

Policy and Administrative Procedure 00-02-301, effective since September 1, 2020. In broad strokes, the policy requires that a prisoner complete a formal grievance and two appeals to exhaust a claim. The parties agree as to the substance of the written policy, which is thoroughly set out in Rollins v. Hyatte, 3:21-CV-767-RLM-MGG, slip op. at 4–6. The court adopts that discussion for purposes of this case.

*Warden Hyatte and Deputy Warden Payne's Account*

Warden Hyatte and Deputy Warden Payne assert that Mr. Parish filed a grievance but didn't exhaust the appeals process. Their evidence includes the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, [Doc. 19-2], Mr. Parish's grievance history, [Doc. 19-3], and a declaration of Michael Gapski, a grievance specialist at Miami Correctional Facility. [Doc. 19-1].

Mr. Gapski handles grievances and appeals as an offender grievance specialist at Miami Correctional Facility. He reviewed Mr. Parish's grievance records. He attests to the steps prescribed by the grievance policy and attests that that's the only official policy. He also attests to Mr. Parish's grievance history.

According to Mr. Gapski, the prison received from Mr. Parish a grievance about cell conditions on September 15, 2020. The grievance was dated September 6, 2020. A grievance specialist denied the grievance, explaining that

it had already been addressed and Mr. Parish had been removed from the cell. The grievance was assigned number 117588.

Mr. Parish appealed the grievance on October 13 and the grievance was returned to Mr. Parish on October 20. Mr. Parish had written in a box where the warden writes a response and where a prison isn't to write anything. Mr. Parish was told he had five business days to correct the mistake, which he did by resubmitting the form on October 21.

On October 27, the warden responded to the appeal, saying, "offenders damaged these items — replacement parts on order." The prison has no record of an appeal of the warden's decision.

Mr. Gapski attests that "if [Mr. Parish] had submitted a third-level formal grievance appeal of any kind, the Offender Grievance Specialist would have received it and responded to it, in accordance with procedure." [Doc. 19-1 at 7].

The defendants' copies of Mr. Parish's grievances and appeals and grievance log support Mr. Gapski's account.

*Mr. Parish's Account*

Mr. Parish asserts that he exhausted all administrative remedies available to him. His evidence includes his own declaration, [Doc. 33-7 at 92–95], the deposition transcript of Michael Gapski, the already-mentioned grievance specialist who also served as Rule 30(b)(6) representative for the prison, [Doc. 33-1], the deposition transcript of Charlene A. Burkett, the Director of the Indiana Department of Correction Ombudsman Bureau, [Doc. 37-2 to 37-5], and

5

the deposition transcript of Stacy Hall, a correctional officer and law librarian at Miami Correctional Facility, [Doc. 37-6].

According to Mr. Parish's declaration, he was placed in restrictive housing for forty-five or so days starting in late August 2020. On September 6, 2020, he submitted a grievance about his cell conditions, which was assigned number 117588. The grievance was denied, so he appealed, but the appeal was rejected because he wrote in a spot reserved for the warden's response. He resubmitted a corrected appeal.

Mr. Parish never heard back from the warden about his appeal. He tried to appeal the warden's non-response by writing an appeal on a sheet of paper and turning it in. He never received a response to that appeal. He later filed another appeal about his cell conditions, which never received a response.

Mr. Parish says that when a grievance is first denied, prisoners at Miami Correctional Facility receive the denial with the original grievance, but don't receive State Form 45473. A prisoner must request that form from a dorm representative, counselor, or law librarian. He says he was never told that he could file an appeal that didn't receive a response.

Mr. Parish presents Mr. Gapski's testimony as evidence that Miami Correctional Facility didn't follow department policy and made the grievance process impossible. Mr. Gapski, a grievance specialist at Miami Correctional Facility, testified as Miami Correctional Facility's Rule 30(b)(6) representative and described how grievance specialists at Miami Correctional Facility handled the grievance process. He explained that in restrictive housing, like Mr. Parish's

6

unit, a prisoner wishing to file a grievance would complete a grievance form, hand it to a correctional officer, and the correctional officer would put the grievance in prison intraoffice mail to be delivered to the grievance specialists. No grievance is logged until a grievance specialist receives the grievance, and grievance specialists have no way of knowing whether or when a correctional officer accepted a prisoner's grievance, which correctional officer accepted a grievance, or what happened to a grievance that was sent but never received.

Mr. Parish also presents deposition testimony of Charlene Burkett, the Director of the Department of Correction Ombudsman Bureau. The Ombudsman Bureau handles prison complaints independently of the Department of Correction and Indiana Department of Administration but doesn't have enforcement power. The Ombudsman Bureau received several complaints from plaintiffs in the consolidated cases, each claiming that Miami Correctional Facility didn't respond to their grievances.

Likewise, Officer Stacy Hall, who was a law librarian in May or June 2021, attested that thirty to forty prisoners complained to her that their grievances didn't receive responses.

DISCUSSION

Mr. Parish and the defendants move for summary judgment on the exhaustion defense. The governing law is set out thoroughly in the court's order on cross-motions for summary judgment in Rollins v. Hyatte, 3:21-CV-767-RLM-

MGG, slip op. at 11–12, and the court adopts by reference discussion of the governing law.

The parties agree that Mr. Parish filed a grievance, appealed it improperly, and then filed a corrected appeal. After that, they disagree. The defendants argue that the final appeal was available, and Mr. Parish didn't exhaust that step because he didn't appeal the warden's response. Mr. Parish contends that he didn't receive the warden's response, so the final appeal was unavailable to him. Whether Mr. Parish exhausted administrative remedies comes down to whether the final level of appeal was available to him.

Approaching from Mr. Parish's perspective makes for a clearer picture.

Mr. Parish points to his actions and Miami Correctional Facility's inaction and silence to show that he exhausted available remedies. His says in his declaration that he never received the warden's response to his appeal. Although Mr. Parish says he was never told he could file a non-response, the grievance policy requires an appeal of a non-response. Mr. Parish says he wrote an appeal of the non-response on sheet of paper and submitted it. This appeal didn't receive a response.

According to Mr. Parish, this evidence shows that administrative remedies weren't available because the prison didn't respond to his grievances or appeals. He says that prison officials' failure to respond meant that the process wasn't available. *See* Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002).

If Mr. Parish is believed, then he exhausted available remedies. First, his assertion that he didn't receive a response to his appeal shows remedies were

8

unavailable because the policy didn't fully account for non-responses. The grievance policy dictates that a prisoner starts a final-level appeal by marking the warden's response with "disagree." But Mr. Parish claims he didn't receive a response at all. The defendants and the policy don't explain how a prisoner who receives no response from the warden can mark "disagree" on a form that is never received and that that might not even exist. The policy puts a prisoner who receives no response from the warden in the impossible situation of needing to appeal the non-response by including the response that was never received.

Despite this impossible task, Mr. Parish tried to appeal the non-response, as policy required. So, even if the grievance policy made enough sense for appealing non-responses, such that he'd be held to that standard, he still exhausted his remedies by appealing the non-response. Ultimately, the policy's rules about appeals are "based on the assumption that the prisoner has received a response to his original grievance," and doesn't account for non-responses. Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *8–9 (S.D. Ind. Jan. 10, 2011). This policy gap means "there is no adequate appeals process," so Mr. Parish "cannot be faulted for failing to appeal." Id. (citing Dole v. Chandler, 438 F.3d 804, 809–810 (7th Cir. 2006)).[2]

---

[2] Another gap in the policy involves timing. Mr. Parish had to appeal the warden's non-response within ten business days of when the warden received an appeal. Timing didn't depend on when Mr. Parish signed or sent a grievance or appeal, and he had no way of knowing when someone else received his grievance or appeal. A prisoner who doesn't receive a response is apparently left to speculate about when an appeal of a non-response is due.

9

The defendants try to undermine Mr. Parish's evidence. They argue that his declaration is too vague about when he filed his makeshift appeal. But the declaration says the makeshift appeal was filed "[a]round the same time" as the warden's putative response, so timing is clear — Mr. Parish filed the makeshift appeal sometime around October 27, 2020, the date the warden signed his response. They say the declaration is too vague about how Mr. Parish "filed" the appeal or who took the appeal from him, but neither assertion is so vague that the declaration is useless. The defendants make the same objections to Mr. Parish's claim that he filed a new grievance after his makeshift appeal. Whether the declaration is too vague about the new grievance doesn't change the outcome because the defendants would be left with Mr. Parish's unrebutted assertion that he didn't receive the warden's response and that the policy didn't account for how to appeal non-responses. The assertions the defendants object to as too vague are about actions Mr. Parish took after reaching the dead end of appealing a non-response.

The defendants more generally characterize the declaration as self-serving and therefore of no use at summary judgment unless unaccompanied by other evidence. [Doc. 43 at 10]. (citing Buie v. Quad/Graphics, Inc., 366 F.3d 496, 504 (7th Cir. 2004)). The rule that a self-serving declaration or affidavit alone can't defeat summary judgment has been bad law for a decade in this circuit. Hill v. Tangherlini, 724 F.3d 965, 967–968 (7th Cir. 2013) ("[T]he term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."). The court of

10

appeals expressly overruled a litany of its cases "to the extent that they suggest a party may not rely on 'self-serving' evidence to create a material factual dispute." Id. at 967 n.1. The self-serving nature of Mr. Parish's declaration isn't reason to discard it.

Warden Hyatte and Deputy Warden Payne next turn to legal arguments against Mr. Parish's claims.

First, the defendants argue that administrative remedies were available because Mr. Parish's grievance received a response and because Mr. Parish filed an appeal after his first appeal was returned. This, the defendants argue, shows that "although the process did not always provide [Mr. Parish] with the relief sought, the process was available for some relief." [Doc. 43 at 6].

This argument's implication is unusual. By saying that the first two of three steps' availability is enough to show that the entire process was available, the defendants imply that they'd be free to make the third step unavailable while still invoking the exhaustion defense as long as they kept the first step or two available. More importantly, this argument doesn't address Mr. Parish's claim that he didn't receive the warden's response, so doesn't contradict Mr. Parish's argument.

The defendants then argue that Mr. Parish hasn't shown he exhausted administrative remedies because he doesn't have evidence that he filed a final appeal. This argument talks past Mr. Parish. He concedes he didn't file a formal final appeal because he didn't receive a response, which he needed to file an appeal. This argument doesn't contradict Mr. Parish's claim that he couldn't

11

appeal because he never responded. Nor does it account for his assertion that he submitted an appeal of the warden's non-response.

The defendants argue that the grievance process wasn't so onerous that it was unavailable. *See* Ross v. Blake, 578 U.S. 632, 643 (2016) ("[A]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."). The policy manual requires that prisoners be advised of the grievance policy during admission and orientation. Mr. Gapski attested that admission and orientation includes written information about the grievance process for prisoners. The defendants point out that Mr. Parish has no evidence that he didn't receive this information in admission and orientation. They add that Mr. Parish's grievance log includes several grievances, so the administrative process mustn't be so opaque as to be unavailable.

This argument contradicts Mr. Parish's statement that he was never told that he could appeal a non-response after the time to respond passed. That contradiction doesn't create a genuine dispute over availability of remedies. Mr. Parish argues — and supports with evidence — that his own appeal went unanswered. That Mr. Parish received information about the grievance policy upon arriving at Miami Correctional Facility doesn't make up for any lack of response to a grievance, especially when the policy doesn't fully account for non-responses.

The defendants also cite other prisoners' experience as proof that Mr. Parish had full access to all steps. Jeremy Blanchard, a plaintiff in a consolidated case, Blanchard v. Hyatte, 3:21-CV-160-RLM-MGG, successfully filed a final

12

appeal. The defendants say this shows that Mr. Parish could therefore file a final appeal. Mr. Parish doesn't argue, though, that no appeal ever received a response. Nor would he have to show that no appeal ever received a response to show that *his* appeal didn't receive a response. Mr. Blanchard's experience doesn't contradict Mr. Parish's.

The defendants' reasons to reject Mr. Parish's evidence and arguments are unpersuasive, so Mr. Parish is entitled to judgment on the affirmative defense unless the defendants can somehow prove they're nevertheless entitled to judgment or can show that there's a genuine dispute of material fact requiring a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

Warden Hyatte and Deputy Warden Payne argue that they're entitled to summary judgment because they have no record of Mr. Parish's grievances and appeals about housing conditions. If there are no records of grievances or appeals, he must not have exhausted administrative remedies. Their argument rests on two faulty premises: (1) if the warden signed a response, then it was delivered to the intended recipient; and (2) every grievance or appeal that is submitted is received by the grievance specialists. The second premise, put differently, is that an appeal isn't received only if a prisoner doesn't submit it.

Mr. Parish has shown that neither premise is sound. He presents evidence from Mr. Gapski that grievance specialists have no way of knowing when a grievance or appeal is submitted, which member of prison staff handles an appeal before it arrives with the grievance specialists, or how or when a response gets to a prisoner. The last part — that grievance specialists don't know how or

13

when a response gets to a prisoner — leaves Mr. Parish's claim that he didn't receive a response uncontested. The policy and other evidence simply don't explain why the warden's response *must* have arrived with Mr. Parish.

Similar logic applies to Mr. Parish's claim that he tried to submit a makeshift appeal of the non-response. The defendants don't have evidence that all appeals arrive with the grievance specialists, and they don't controvert Mr. Parish's claim that he submitted a makeshift appeal. That Mr. Parish successfully submitted grievances at other times doesn't controvert that he didn't have available administrative remedies while in restrictive housing. On the contrary, the lack of records could be consistent with his version of events. As Judge Barker, in a similar case, explained:

> Although there is no record of any of these grievances in the prison database, that record is obviously only accurate as to the grievances that are actually inputted into the system by prison officials. In other words, even if a prisoner properly submits a grievance to an appropriate prison official, if the prison grievance specialist does not receive it, either because it is lost or forgotten, or if the grievance specialist fails for some other reason to input the grievance into the system, there would be no record of it having been filed.

Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *6–7 (S.D. Ind. Jan. 10, 2011). The defendants' evidence shows that Mr. Parish's makeshift appeal didn't get logged. That's entirely consistent with Mr. Parish's evidence and the policy of logging grievances only once they're received.

In summary, the defendants' argument that the absence of evidence is the evidence of absence doesn't contradict Mr. Parish's evidence that administrative remedies weren't available. The defendants' evidence is consistent with Mr. Parish's claims, so doesn't create a genuine issue as to whether administrative

14

remedies were available to Mr. Parish. Administrative remedies weren't available to Mr. Parish, so he satisfied 42 U.S.C. § 1997e(a) before suing.

A court normally holds a Pavey hearing to resolve factual disputes bearing on administrative exhaustion, but needn't hold a hearing if it can resolve the issue of exhaustion on the documentary evidence. Bessler v. Wexford of Ind. LLC, No. 3:21-CV-691, 2022 U.S. Dist. LEXIS 199409, at *7–8 (N.D. Ind. Nov. 2, 2022). Neither party requested a Pavey hearing and the consistency between Mr. Parish's claim of exhaustion and the defendants' evidence means there's no genuine issue of material fact. Accordingly, the court denies the defendants' motion for summary judgment and grants Mr. Parish's motion for summary judgment without a Pavey hearing.

Mr. Parish requested oral argument to help the court narrow its focus on the voluminous records and briefs across the consolidated cases. Oral argument is unnecessary, so the court denies the request for oral argument.

CONCLUSION

For these reasons, the court DENIES the defendants' motion for summary judgment; GRANTS Mr. Parish's motion for summary judgment; REJECTS the exhaustion defense; and DENIES AS MOOT. Mr. Parish's motion for consolidated oral argument.

SO ORDERED.

ENTERED:   August 15, 2023

/s/ Robert L. Miller, Jr.
Judge, United States District Court